UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRYSTAL L. N., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 21-CV-114-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,**[1] | ) |
| | ) |
|     **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. For the reasons set forth below, the Commissioner's decision is **affirmed**.

**I.**     **Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

**II.    Procedural History**

Plaintiff filed an application for Title II social security disability benefits and Title XVI supplemental security income on June 4, 2019. (R. 16). Plaintiff alleged that she became disabled due to a combination of physical and mental impairments, including type II diabetes mellitus, fibromyalgia, migraines, hypertension, memory loss and pain from concussion, hypothyroid, microalbuminuria kidney disease, vision issues in the right eye,

knee pain, anxiety, depression, chronic pain syndrome, diabetic neuropathy, and minor hip injury. (*See* R. 65-66).[2] Plaintiff was forty-nine years old on the alleged onset date of September 15, 2018. (R. 65). Before her alleged disability, plaintiff worked as a Certified Nursing Assistant (CNA), home health aide, and hotel desk clerk/assistant manager. (*See* R. 24, 76). The Commissioner denied Plaintiff's application on initial review and on reconsideration. (*See* R. 16). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing by telephone on August 4, 2020 (R. 33). Testimony was given by plaintiff and a vocational expert (VE). On September 1, 2020, the ALJ issued a decision denying disability benefits. (R. 16-25). On January 12, 2021, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Following the Appeals Council's denial, plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's September 1, 2020 decision under 42 U.S.C. § 405(g).

## III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of

---

[2] Evidence in the record indicates that plaintiff was injured on October 7, 2015, and subsequently reached a workers' compensation settlement with her previous employer. (*See* R. 201).

impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of June 4, 2019. (R. 19). At step two, the ALJ determined that plaintiff has the following severe impairments: fibromyalgia; diabetes; diabetic neuropathy; depressive disorder; and generalized anxiety disorder. *Id.* The ALJ found that plaintiff's impairments of stress incontinence, microalbuminuria kidney disease, and hypertension are non-severe, and found insufficient evidence of impairments related to plaintiff's alleged migraines, memory loss, and vision issues in the right eye. *Id.* At step three, the ALJ found that plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing. *Id.* The ALJ specifically noted plaintiff's physical impairments in connection with Listing 11.14 (pertaining to peripheral

4

neuropathy) but found no evidence of an extreme limitation in plaintiff's ability to stand up from a seated position, balance while standing or walking, or use her upper extremities. (R. 19-20).

With regard to mental impairments, the ALJ found that plaintiff's impairments do not meet or medically equal the criteria of Listings 12.04 (Depressive, bipolar, and related disorders) or 12.06 (Anxiety and obsessive-compulsive disorders). (R. 20). The ALJ discussed application of the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 20-21); *see* 20 C.F.R. § 404 subpt. P App'x 1. The ALJ found that plaintiff has a moderate limitation in understanding, remembering, and applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in her ability to adapt and manage herself. (R. 20). Because plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. *Id.* The ALJ also considered the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not present. (R. 20-21).

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform

> light work as defined in 20 C.F.R. 416.967(b). Specifically[, plaintiff] is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. [Plaintiff] can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. [Plaintiff] can understand, remember, and carry out simple tasks. Public contact should not be

5

>> a part of the job duties. [Plaintiff] can tolerate superficial (brief and cursory) contact with coworkers and supervisors.

*Id.* In making this finding, the ALJ addressed plaintiff's hearing testimony and other subjective statements as well as medical opinions, objective medical evidence, and prior administrative medical findings in the record. (*See* R. 21-24).

Citing the VE's testimony as to a hypothetical person with plaintiff's RFC, the ALJ found that plaintiff is unable to perform her past relevant work. (R. 24). Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with Plaintiffs age, education, work experience, and RFC, the ALJ found that plaintiff can perform the requirements of representative occupations, including:

>> ***Housekeeper***, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 323.687-014, with 414,000 jobs existing in the national economy;
>>
>> ***Small products assembler***, light exertion, unskilled, SVP level 2, DOT # 706.684-022, with 190,000 jobs existing in the national economy; and
>>
>> ***Electronics assembler***, light exertion, unskilled, SVP level 2, DOT # 729.687-010, with 350,000 jobs existing in the national economy.

(R. 25). Accordingly, the ALJ concluded at step five that Plaintiff is not disabled. *Id.*

### IV. Discussion

Plaintiff argues that the ALJ's decision (1) did not adequately address the medical records from plaintiff's treating physician, Dr. Gregory Hightower, in formulating the ALJ's RFC determination; and (2) failed to meet the Commissioner's burden at step five due to an unresolved conflict between the DOT and the VE's testimony. Defendant contends the ALJ's decision is supported by substantial evidence and is legally sound.

A. RFC

In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008).

Plaintiff argues that the ALJ improperly ignored medical treatment evidence from Gregory Hightower, M.D., who treated plaintiff between January 2017 and May 2020. Dr. Hightower treated plaintiff for multiple conditions. In a letter dated April 24, 2019, Dr. Hightower confirmed that plaintiff was under his care and has diagnoses including right knee pain, anxiety and depression, chronic pain syndrome, diabetes mellitus type II, diabetic neuropathy, fibromyalgia, minor hip injury, hypertension, hypothyroidism, microalbuminuria (kidney disease), and tobacco use. (R. 310). Dr. Hightower further stated that plaintiff

> has had fibromyalgia, diabetic neuropathy, and chronic pain for many years. She has been tried on conservative treatment for the last 2 years under my care including NSAIDs, tylenol[sic], heat, stretches, PT, topical medications, excercise[sic], and other non-pharmocologic[sic] options. With increasing pain and functional limitations, [plaintiff] was restarted on opioid medications despite her prolonged abstinence from them. In order to help decrease the opioid demand, we discussed and tried other non-opioid options to help.

> [Plaintiff] has been seen by rheumatology as well to confirm diagnosis and treatment plans.
>
> With this patient, multiple attempted non-opioid medications, SSRIs/SNRIs, NSAIDs, Muscle relaxants and adverse reactions to Cymbalta[sic], failed lyrica/gabapentin[sic], and ongoing pain[. M]y recommendation is for a trial of milnacipran rather than increased opioid doses.

*Id*.

The ALJ's decision cited this letter, noting that Dr. Hightower treated plaintiff for fibromyalgia and chronic pain syndrome. (R. 19). Nonetheless, the ALJ found that Dr. Hightower's examination notes, as well as the report from consultative examiner David Weigman, M.D., "consistently showed normal findings" and thus did not support additional physical RFC limitations. (R. 23). Moreover, while Dr. Hightower prescribed medication for plaintiff's mental impairments, the ALJ found "no evidence [plaintiff] has sought or received [treatment] from a mental health professional." (R. 23).

In addition to referencing Dr. Hightower's April 2019 letter, the ALJ's decision summarized pertinent information from Dr. Hightower's notes in explaining his findings at step two and in the RFC assessment.[3] Treatment notes showed diagnoses of migraines, memory loss, microalbuminuria kidney disease, and vision issues in the right eye, but showed no treatment for those conditions. (R. 19). Dr. Hightower noted that plaintiff's hypertension was controlled with medication. (*Id*.; *see* R. 344, 354, 369, 392, 421). Plaintiff's diabetes was also controlled, according to Dr. Hightower's May 27, 2020

---

[3] Plaintiff's brief asserts incorrectly that the ALJ's decision did not reference any records from Dr. Hightower. (Doc. 15 at 7).

8

examination notes. (R. 22; *see* R. 421).

The ALJ's decision also addressed other treatment notes in 2019 and 2020. Plaintiff complained of hip pain, but physical examination findings were largely normal in November 2019 and January 8, 2020. (R. 22; *see* R. 332-338). Henry F. Stroope, M.D. observed a full, painless range of motion and normal muscle strength in the cervical spine and neck. (R. 22; *see* R. 333-334, 336-337). Plaintiff exhibited pain in the left hip during examination on January 22, 2020, but she was able to walk down the hall with no Trendelenburg gait. (R. 22). After unsuccessfully treating a severe bursitis of the left hip with injections and oral medication, Dr. Stroope recommended an MRI to inform further treatment. (*Id.*; *see* R. 330). Plaintiff exhibited a normal mood and appropriate affect on multiple occasions. (R. 22; *see* R. 330, 334, 337).

Additionally, state agency reviewing physicians consultants noted plaintiff's alleged symptoms, including pain, weakness, limitations in sustained concentration and persistence, social interaction, and ability to adapt. (*See* R. 69, 71, 97-98, 103-104). However, upon reviewing plaintiff's medical records, the consulting physicians assessed an RFC for light work, consistent with the ALJ's RFC determination. (R. 23). The ALJ found these opinions "consistent with the relatively normal physical examinations" in plaintiff's record. *Id.* Reviewing psychologists found that plaintiff can perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, with limited public contact, and can adapt to a work situation. (*Id.*; *see* R. 75-76, 123). The ALJ largely adopted these recommendations in his decision and further restricted plaintiff's RFC to include no public contact. (*See* R. 23-24).

As such, substantial evidence supports the ALJ's RFC determination. Moreover, as the ALJ noted, Dr. Hightower "did not place any functional restrictions on [plaintiff's] activities that would preclude light work activity" consistent with the RFC determination. (R. 23). The focus of disability determination is on the functional consequences of a condition, not merely the diagnosis or the attendant circumstances. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record); *see also Scull v. Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir. 2000) (unpublished) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition.").

Thus, the ALJ was only obligated to discuss Dr. Hightower's treatment notes to the extent they contain evidence of additional limitations not assessed in the RFC. However, plaintiff has pointed to nothing in Dr. Hightower's notes supporting functional limitations beyond those the ALJ included in her RFC determination; nor has the Court's review of Dr. Hightower's treatment records identified significant evidence that is not cumulative of issues the ALJ addressed in his decision. As such, the ALJ's decision provided an adequate discussion of Dr. Hightower's notes. *See Mays*, 739 F.3d at 576; *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation); *see also Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004) (where "ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened").

10

"The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Here, Plaintiff points to no medical opinion assessing functional limitations greater than those the ALJ assessed. To the contrary, as the ALJ explained, plaintiff's treating physicians did not assign any functional restrictions more limiting than the RFC assessment, and a psychological consultative examiner opined that plaintiff appeared to be emotionally capable of employment. (R. 23). To the extent the ALJ's decision did not specifically address specific portions of the medical evidence from Dr. Hightower, plaintiff has not met the burden of showing harmful error.

B.     **Vocational Evidence**

Plaintiff argues that the ALJ erroneously failed to address a conflict between the VE's testimony regarding alternative jobs and the DOT. Under SSR 00-4p, "[w]hen a VE [. . .] provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between [the VE's testimony] and information provided in the DOT." SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000). The "occupational evidence provided by a [VE] generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. When a legitimate conflict exists between VE testimony and the DOT, the ALJ has an affirmative duty to "investigat[e] and elici[t] a reasonable explanation for any conflict" between them. *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999). An ALJ's failure to ask a VE to reconcile a conflict between the VE's testimony and the DOT is reversible error. *Id.*; *Kreuger v. Astrue*, 337 F. App'x 758, 761-62 (10th Cir. 2009).

Here, plaintiff contends that two of the three alternative jobs the ALJ identified at step five—housekeeper and small products assembler—may require interaction with the public, contrary to the RFC restriction that "[p]ublic contact should not be a part of [plaintiff's] job duties." (R. 21). She argues that the ALJ therefore failed to elicit a reasonable explanation for testimony by the VE that conflicts with the DOT. Plaintiff contends that, as a result of this error, the Commissioner has failed to meet its burden at step five.

Without conceding that a conflict exists regarding the housekeeper and small products assembler jobs, the Commissioner argues that the Court need not address that issue, because the remaining job of electronics assembler exists in sufficient numbers to meet the Commissioner's step-five burden. Plaintiff does not dispute that a person of plaintiff's vocational profile and RFC could perform the job of electronics assembler. However, she contends that the Court may not properly substitute its own finding as to whether the remaining number of jobs is sufficient.

The Tenth Circuit has explained that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004 (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). As such, generally, the Court should not supply a dispositive finding that the remaining two jobs represent a significant number sufficient to satisfy the Commissioner's step-five burden. *See Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (remand appropriate where number of jobs is relatively few and it is not clear whether the ALJ found number of each job or collective number of jobs to constitute a

significant number). However, it may be appropriate for the Court to make such a dispositive finding based on harmless error in the "exceptional circumstance, i.e., where, based on material the ALJ did at least consider . . ., we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (assuming without deciding that two of three jobs relied on by the ALJ were erroneous, the court found substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy); *see also Johnson v. Comm'r, SSA*, 764 F. App'x 754, 761-62 (10th Cir. 2019) ("[G]iving Johnson the benefit of any doubt that the janitor job might involve concentrated exposure to humidity, there were still a significant number of machine packager jobs in the national economy—178,000—that Johnson could perform.").

This exceptional circumstance is present here. Even assuming (without deciding) that two of the three jobs at step five are eliminated, the remaining job of electronics assembler represents approximately 350,000 jobs nationally, according to the VE's testimony.[4] The Tenth Circuit has not identified a "bright-line answer as to how many jobs are enough . . .

---

[4] The Commissioner disputes that any evidentiary conflict exists regarding the housekeeper and small products assembler jobs. Notably, the DOT assigns both jobs a "people rating" of 8, which represents "the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016). This rating describes the need to take instructions as only "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." *DOT*, App. B—Explanation of Data, People, & Things, 1991 WL 688701.

to say, as a matter of law, that the number is significant," although it has noted that "the number appears to be somewhere between 100 . . . and 152,000." *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008).

Here, the VE gave undisputed testimony that at least 350,000 jobs are available to a person with plaintiff's vocational profile and RFC. This number exceeds the range identified by the Tenth Circuit in *Evans*—indeed, it is more than twice the top of the range. It is also nearly twice the number of jobs that the Tenth Circuit in *Johnson* found warranted a dispositive judicial finding of significant numerosity. 764 F. App'x at 761-62. Given the undisputed evidence that 350,000 electronics assembler jobs would remain available, "no reasonable administrative factfinder" could have concluded that an insufficient number of alternative jobs exist consistent with plaintiff's vocational profile and RFC. *Allen*, 357 F.3d at 1145. As such, remand is not warranted.

V.      **Conclusion**

The undersigned finds that the ALJ's decision is supported by substantial evidence based on the applicable legal standards. Accordingly, the decision of the Commissioner finding Plaintiff is not disabled is **affirmed.**

**SO ORDERED** this 14th day of September, 2022.

Christine D. Little
United States Magistrate Judge